## Richmond

REGINALD HAROLD WINSTON, JR.

v.

COMMONWEALTH OF VIRGINIA

No. 1185-89-2

Decided April 23, 1991

COUNSEL

John M. Wright, Jr. (G. Warthen Downs; Downs & Wright, on brief), for appellant.

Robert B. Condon, Assistant Attorney General (Mary Sue Terry, Attorney General; Richard A. Conway, Assistant Attorney General, on brief), for appellee.

OPINION

**COLE, J.**—Tried by jury upon indictments charging first degree murder and use of a firearm in the commission of murder, the appellant, Reginald Harold Winston, Jr., was found guilty of both offenses and sentenced to life and two years imprisonment, respectively. On appeal, Winston asserts that the trial court failed to: (1) properly instruct the jury to disregard the prosecutor's comment alleging that the defendant had slept during the trial; (2) grant the defendant's motion for a mistrial; and (3) grant the defendant's motion for a new trial based on the prosecutor's remarks, which provoked the defendant's outbursts in violation of his right not to testify.

On the evening of August 14, 1988, Reginald Harold Winston, Jr., Lasco Spinks and Kenya Robinson went riding in Robinson's car looking for a pool party. They saw a group of young people walking and asked them where the party was located. A member

of this group, Warren Thomas, responded with profanity and stated that the party was over. Robinson stopped the car and all three occupants exited. The defendant began to argue with Thomas, who was standing approximately twenty feet away. The argument ended and Thomas and his group of friends turned to walk away. Within seconds, a shot was fired from the vicinity of Robinson's car. Wray Pulliam, who was walking with Thomas, was fatally wounded by a bullet in the back. At trial, both Spinks and Robinson testified that the defendant shot Pulliam.

During closing argument, while addressing the jury concerning the appropriate sentence, the Commonwealth's attorney stated:

> And it is not my job to tell you what this crime is worth. That is in the law of Virginia uniquely within your province, but I'm going to suggest factors for you to consider, as you make that choice. You've watched him during the course of the trial, as he slept. Is the killing of Wray Pulliam very serious. . . .

At this point the record states: "Several outbursts were made by the defendant, which were unintelligible, as during these outbursts his counsel and the court were admonishing him for these outbursts." The jury was excused from the courtroom. Defense counsel moved for a mistrial on the ground that there was no evidence in the record that the defendant had slept, contending that the comment was highly prejudicial since the defendant had not testified. The court denied the motion for mistrial and noted the defense's objection. Defense counsel then stated, "Judge, would you give a cautionary instruction to the jury though, that — I mean. . . ." The judge replied, "I will tell the ladies and gentlemen of the jury that they have observed the witnesses and the defendant and everybody else in the room and they are to make their own judgments." The defense counsel stated, "All right, I don't think it undoes it, but we still note our objection." The defense then asked for permission to tell the jury during his closing argument that the defendant suffered from asthma, to which the prosecution stipulated. The court granted the request.

After the jury returned, the trial court made the following statement:

Ladies and gentlemen, will the jury excuse me. The comments by the Commonwealth's attorney prompted a reaction. You are the judges of what you saw in the courtroom both yesterday and today and only you will be able to decide the facts, the demeanor of the witnesses on the stand, and you will be further instructed at the conclusion of all the arguments.

Defense counsel, in closing argument, informed the jury that the defendant had not slept but had a serious case of asthma. He mentioned that the jury may have noticed the inhaler that the defendant had at trial the previous day.

The jury found the defendant guilty of first degree murder and use of a firearm in the commission of murder. By order dated May 10, 1989, the trial court affirmed the verdicts. On May 24, 1989, the defendant filed a "Motion to Set Aside the Verdict and for New Trial" on the grounds that the Commonwealth's attorney's comment that the defendant had been asleep was improper and concerned matters not in evidence, that it constituted a comment on the defendant's failure to testify, and that the outburst it provoked was prejudicial. This motion was denied.

In its letter opinion, the trial court stated, "The basic question which the Court must decide is whether or not the above statement was a comment on the defendant's failure to testify." The trial judge indicated that his trial notes stated, "Reginald Winston is nodding." The court concluded that the remarks were not a comment on the defendant's failure to testify.

■ Virginia has not previously ruled on the propriety of a prosecutor's comment on the courtroom behavior or demeanor of a non-testifying defendant. However, several federal circuit courts, including the fourth circuit, have addressed the issue. These cases have found a prosecutor's comment on the in-court behavior or demeanor of a non-testifying defendant to be improper because: (1) the prosecutor cannot introduce evidence of the bad character of the accused unless and until the defendant puts his character in issue;[1] (2) under the fifth amendment the defendant has a right not to be convicted except on the evidence adduced at trial; and

---

[1] These federal cases also rely on Fed. R. Evid. 404(a) which forbids the introduction of evidence of the character of the accused solely to prove guilt. However, the defense

(3) such comments, in some situations, constitute an improper comment on the defendant's failure to testify. *See United States v. Carroll*, 678 F.2d 1208, 1209-10 (4th Cir. 1982); *see also United States v. Schuler*, 813 F.2d 978, 979-82 (9th Cir. 1987); *United States v. Pearson*, 746 F.2d 787, 796 (11th Cir. 1984); *United States v. Wright*, 489 F.2d 1181, 1186 (D.C. Cir. 1973).

■ The Commonwealth's attorney's statement to the jury that, "You've watched him [the defendant] during the course of the trial as he slept" was improper in that it referred to evidence not in the record. *See Carroll*, 678 F.2d at 1210. "The Supreme Court has declared that 'one accused of a crime is entitled to have his guilt or innocence determined solely on the basis of the evidence introduced at trial, and not on grounds . . . not adduced as proof at trial.'" *Schuler*, 813 F.2d at 981 (quoting *Taylor v. Kentucky*, 436 U.S. 478, 485 (1978)). Virginia adopted a similar reasoning in *Dingus v. Commonwealth*, 153 Va. 846, 850, 149 S.E. 414, 416 (1929), where the prosecutor commented on the victim's wife's presence in the courtroom by stating, "If it had not been for the defendant there firing that shot and killing the deceased, his widow would not be here in mourning weeds." The Court held that this comment was improper not only because it appealed to the passion of the jury, but also because the demeanor and behavior of an onlooker was irrelevant and "can afford no proper basis for argument." *Id.* at 851, 151 S.E.2d at 415.

■ The jury, of course, on its own, can observe the demeanor of the non-testifying defendant. "What the jury may infer, given no help from the court, is one thing. What it may infer when the court in effect tells it that the courtroom behavior of the accused constitutes evidence against him is something altogether different." *Wright*, 489 F.2d at 1186. When the defendant elects to testify, the jury may properly consider the defendant's demeanor as it relates to credibility.

The Court in *Carroll* stated:

> We do not doubt that if an improper statement, not elicited by the government, is made during trial, and if the admissible evidence of guilt is "solid and convincing," prompt and

did not raise a specific objection on the ground of improper character evidence. Therefore, consideration of this issue is barred under Rule 5A:18.

strong curative instructions may dissipate the error. The same may be true when the improper statement is elicited by the government.

678 F.2d at 1210 (citation omitted).

No curative instruction was given in *Pearson, Wright* or *Schuler*. Although an instruction was given in *Carroll*, it came at a "not-inconsiderable period of time" after the prosecutor's remarks. The Court held that this lapse of time in addition to the fact that the government had "something less than an overwhelming case" combined to make it "more than a fair possibility that the improper argument contributed to the defendant's conviction." 678 F.2d at 1210.

The crux of the defendant's argument is that, by stating that the defendant was asleep during his trial for murder, the Commonwealth was able to characterize the defendant as callous and indifferent despite his not taking the stand or having evidence in the record to substantiate this inference.

The cautionary instruction given by the trial judge was, at best, weak and did not explicitly instruct the jury to disregard the prosecutor's statement and the resulting outburst. The defense attorney's explanation may have cured the impropriety but it may have compounded the error by emphasizing it. However, whether the defendant slept or nodded during the trial is clearly a collateral and irrelevant issue. The principle question before the court was whether the defendant was guilty of first degree murder.

Assuming that the trial court committed error in failing to give a cautionary instruction telling the jury to disregard the remarks of the Commonwealth's attorney, and in permitting the defendant to give an explanation of his actions, we find that such error was harmless beyond a reasonable doubt.

The improper remark did not result in prejudice to the defendant. The Supreme Court of Virginia has stated:

Every person accused of crime, whether guilty or innocent, is entitled to have all his legal rights protected during his trial. And in a criminal case, the Commonwealth's attorney, as the representative of the people, should guard against any violation of his right in this respect. But if every improper remark

of counsel were ground for reversal, comparatively few verdicts would stand, since the most eminent counsel are sometimes led into such inadvertencies. Appellate courts, therefore, hesitate to interfere by granting a new trial, except where the prosecuting attorney has so clearly departed from the line of legitimate procedure *that any reasonable person will conclude that the jury were certainly prejudiced thereby.*

*Harris v. Commonwealth*, 133 Va. 700, 708, 112 S.E. 753, 755 (1922); *see also Williams v. Commonwealth*, 234 Va. 168, 181, 360 S.E.2d 361, 369 (1987), *cert. denied*, 484 U.S. 1020 (1988).

This question must be examined in light of the evidence at trial. Warren Thomas testified that during the argument with the defendant, the defendant stated, "I'll cap you in your ass." Thomas said "cap" means "shoot."

The defendant, Lasco Spinks and Kenya Robinson were riding in a car in Robinson's possession. The previous day the defendant had put the rifle owned by him in the trunk of Robinson's car. According to a statement made by Robinson to the police, he opened the trunk and the defendant took the rifle out and the defendant shot Pulliam with it. At trial, Robinson testified that he opened the trunk, he did not know who got the gun out of the trunk, but it ended up in the defendant's hands and the defendant shot Pulliam.

At trial, Spinks testified that Robinson opened the trunk door; he was not sure who took the gun out of the trunk because he had gotten back in the car. He further testified that Robinson had gotten back in the car, leaving the defendant outside the car with the gun, and that the defendant shot Pulliam. There is no evidence in the record to contradict the statements made by Robinson and Spinks that the defendant shot Pulliam.

The medical examiner testified that death resulted from one significant gunshot wound to the back. The bullet went in the back, just to the left of the spine and lodged near the breastbone in front. Other evidence showed that Pulliam was shot in the back as he walked away from the defendant. Evidence of guilt is, therefore, overwhelming. Given these circumstances, any error in the Commonwealth's attorney's statement about the defendant's con-

duct during the trial was collateral and irrelevant to whether he committed the homicide and was harmless beyond a reasonable doubt.

As for the prejudicial nature of the outburst, one commentator has stated:

> [C]ourts have frequently explained their reluctance to consider the disruptive conduct of a defendant to be a proper ground for a mistrial, as being necessitated by the possible consequences of a contrary holding. To hold that the disruptive conduct of a defendant is a proper ground for a mistrial, it has been said, would provide a criminal defendant with a convenient device for provoking a mistrial whenever he chose to do so.

Annotation, *Disruptive Conduct of Accused in Presence of Jury as Ground for Mistrial or Discharge of Jury*, 89 A.L.R.3d 960, 963 (1979). At the sentencing hearing, the court stated: "I do not feel that they [the jury] were swayed in any way by the outburst. It was a tense trial and I don't think that that was something that they could not put aside and decide fairly." Therefore, the denial of the mistrial, the defendant's second assignment of error, was proper. "On appeal the denial of a motion for mistrial will not be overruled unless there exists a manifest probability that the denial of a mistrial was prejudicial." *Harward v. Commonwealth*, 5 Va. App. 468, 478, 364 S.E.2d 511, 516 (1988) (citing *LeVasseur v. Commonwealth*, 225 Va. 564, 589, 304 S.E.2d 644, 657 (1983), *cert. denied*, 464 U.S. 1063 (1984)).

■ Finally, the defendant contends that the prosecutor's improper remark and the outburst it provoked violated the defendant's right not to testify. The Supreme Court has stated:

> In determining whether a remark falls within the boundary of the prohibition that a prosecutor shall not make an adverse comment before the jury on a defendant's failure to testify, the test is whether, in the circumstances of the particular case, "the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify."

*Hines v. Commonwealth*, 217 Va. 905, 907, 234 S.E.2d 262, 263 (1977) (quoting *Knowles v. United States*, 224 F.2d 168, 170 (10th Cir. 1955)).

The prosecutor's remarks in the present case did not amount to a comment on the defendant's failure to testify. The prosecutor was not commenting on the defendant's silence nor would the jury naturally and necessarily consider it as such. *See Hall v. Wainwright*, 733 F.2d 766, 772-73 (11th Cir. 1984), *cert. denied*, 471 U.S. 1107 (1985) (prosecutor's comment that defendant was asleep during trial found not to be comment on failure to testify); *see also Williams v. Commonwealth*, 4 Va. App. 53, 80-81, 354 S.E.2d 79, 94 (1987).

In conclusion, the prosecutor's statement was improper. However, any resulting error was harmless beyond a reasonable doubt. Accordingly, the decision of the trial court is affirmed.

*Affirmed.*

Barrow, J., and Coleman, J., concurred.