COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Willis and Bray
Argued at Richmond, Virginia


BRANDON LEE KING

v.          Record No. 0295-95-3        MEMORANDUM OPINION[*] BY
                                        JUDGE RICHARD S. BRAY
COMMONWEALTH OF VIRGINIA                     MARCH 19, 1996


        FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
                 Richard S. Miller, Judge

        William F. Quillian, III, for appellant.

        Thomas C. Daniel, Assistant Attorney General
        (James S. Gilmore, III, Attorney General, on
        brief), for appellee.


     Brandon Lee King (defendant) was convicted by a jury for

aggravated malicious wounding, the related use of a firearm, and

feloniously discharging a firearm from a motor vehicle.  On

appeal, defendant complains that the trial court erroneously (1)

declined to suppress his inculpatory statement to police and (2)

failed to declare a mistrial after the Commonwealth referenced

defendant's failure to testify during closing argument.  Finding

no error, we affirm the convictions.

     The parties are fully conversant with the record in this

case, and we recite only those facts necessary to a disposition

of this appeal.

     In the early morning hours of April 22, 1994, Bernie

Bernatavicius was shot in the neck and permanently injured.  The

_____
        [*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

following day, juvenile petitions were obtained for defendant, then 16 years of age, and Lynchburg Police Investigator Viar and Commander Burnette proceeded to defendant's grandmother's home to effect his arrest. The grandmother, also defendant's "legal guardian," advised that defendant was not then at the residence. She authorized the officers "to talk" with defendant, once apprehended, and requested that they contact her, although she expressed no desire to be present during questioning. Several hours later, defendant was arrested, handcuffed, and transported to police headquarters, arriving at approximately 12:35 a.m. En route, defendant was advised of his constitutional rights pursuant to Miranda v Arizona, 384 U.S. 436 (1966), and denied knowledge of the offenses.

At the stationhouse, defendant was seated at a desk located in an "office area" of the "investigation bureau." The handcuffs were removed, and police again advised defendant of his Miranda rights, using a departmental "rights form," which was read to defendant, "word for word," and reviewed by him.[1] This form included an affirmation that defendant had read and understood his constitutional rights and was "willing to make a statement and answer questions at this time," without "any threats or promises . . . by the police." Defendant signed and dated the form at approximately 12:40 a.m.

During the ensuing interview, defendant initially denied

---

[1]The compliance of this form with Miranda is not in issue.

- 2 -

involvement in the offenses and stated that "he wanted to talk to a lawyer."  Viar replied, "fine," but, as the officers began to leave the room, defendant volunteered, "[W]ell, I don't really want to talk to a lawyer right now . . . eventually I'm going to have to talk to one."[2]  Defendant then confirmed that he wanted "to keep answering . . . questions" and confessed soon thereafter, repeating his statement for an audio tape which was completed at 1:22 a.m.

At the time of arrest, defendant was 16 years of age, had completed the ninth grade, was literate, and possessed an I.Q. "in the middle of the average range."  He was described by the officers as "very coherent," "intelligently speaking," and alert during the interview, which spanned approximately 45 minutes. Although defendant did not request his grandmother's presence before or during the interrogation, Burnette telephoned defendant's grandmother twice before beginning the interrogation and once thereafter, receiving no answer on any occasion.

I.  THE ADMISSIBILITY OF DEFENDANT'S CONFESSION

"In order for a confession given during a custodial interrogation to be admissible at trial, the Commonwealth must show that the accused was apprised of his right to remain silent and that he knowingly, intelligently, and voluntarily elected to waive that right."  Roberts v. Commonwealth, 18 Va. App. 554,

---

[2]Defendant acknowledges on brief that his request for counsel was "withdrawn" and argues no violation of Edwards v. Arizona, 451 U.S. 477 (1981).

557, 445 S.E.2d 709, 711 (1994).  A "heavy burden rests upon the Commonwealth" to establish a "valid waiver," and the "[c]ourts must indulge every reasonable presumption against" it.  Grogg v. Commonwealth, 6 Va. App. 598, 611, 371 S.E.2d 549, 556 (1988).

"[T]he inquiry whether a waiver of Miranda rights was made knowingly and intelligently is a question of fact, and the trial court's resolution of that question is entitled on appeal to a presumption of correctness."  Harrison v. Commonwealth, 244 Va. 576, 581, 423 S.E.2d 160, 163 (1992).  The voluntariness issue, however, is a question of law which requires "an independent [appellate] examination of the totality of the circumstances to determine 'whether the statement is the "product of an essentially free and unconstrained choice by its maker," or whether the maker's will "has been overborne and his capacity for self-determination critically impaired."'"  Wilson v. Commonwealth, 13 Va. App. 549, 551, 413 S.E.2d 655, 656 (1992) (citation omitted).  "[I]n making that determination, we are bound by the trial court's subsidiary factual findings unless those findings are plainly wrong."  Id.

If the accused is a juvenile, we must consider "'the juvenile's age, experience, education, background, and intelligence, and . . . whether he has the capacity to understand the warnings given him, the nature of his Fifth Amendment rights, and the consequences of waiving those rights.'"  Roberts, 18 Va. App. at 557, 445 S.E.2d at 711 (citations omitted).  While it is

desirable to have a juvenile's parent, legal guardian or other "interested adult" present when the juvenile is interrogated or waives his or her constitutional rights, "the mere absence of a parent or [legal guardian] . . . does not render a [juvenile's] waiver invalid," although it is "a circumstance and factor to be considered in the totality of circumstances when determining whether a waiver is knowing and intelligent." Grogg, 6 Va. App. at 613, 371 S.E.2d at 557; see also Novak v. Commonwealth, 20 Va. App. 373, 387, 457 S.E.2d 402, 409 (1995).

Here, defendant was fully advised of his constitutional rights on two occasions and elected to confess to police only after expressly waiving these safeguards. Defendant's age, education, intellectual capacity, and conduct, including his declarations on the "rights form," together with the circumstances of the interview, all indicate that he acted knowingly, intelligently, and voluntarily. Although the presence of defendant's grandmother was not a prerequisite to a valid waiver of his Miranda rights, police, nevertheless, pursued reasonable efforts to contact her following defendant's arrest. We, therefore, find that defendant's statement was properly admitted into evidence.

Defendant argues, for the first time on appeal, that his confession was tainted by detention in violation of Code § 16.1-247. However, it is well established that this Court will not consider an argument which was not presented to the trial

court.  <u>Jacques v. Commonwealth</u>, 12 Va. App. 591, 593, 405 S.E.2d 630, 631 (1991); <u>see</u> Rule 5A:18.  Accordingly, we decline to address this issue.

## II. DENIAL OF MOTION FOR MISTRIAL

During closing argument to the jury, the prosecuting attorney, after reviewing the Commonwealth's evidence, stated,

> And, against that, the defense has offered the defendant's grandmother to say he couldn't have done it because he was at home a half an hour or twenty minutes before the shooting took place. I'm not saying Mrs. Clay is a liar. I'm not saying that she is telling you anything she believes to be a falsehood. I submit to you that Mrs. Clay is being a good grandmother and doing everything she could possibly do for her grandson. But I also submit to you that Mrs. Clay is mistaken.

Defendant contends that these comments indirectly referenced his failure to testify, necessitating a mistrial.

> In determining whether a remark falls within the boundary of the prohibition that a prosecutor shall not make an adverse comment before the jury on a defendant's failure to testify, the test is whether, in the circumstances of the particular case, "the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify."

Hines v. Commonwealth, 217 Va. 905, 907, 234 S.E.2d 262, 263 (1977) (quoting Knowles v. United States, 224 F.2d 168, 170 (10th Cir. 1955)); Winston v. Commonwealth, 12 Va. App. 363, 370, 404 S.E.2d 239, 243 (1991). The challenged argument in this instance merely contrasted the weight and credibility of the conflicting evidence, without inviting either intended or unintended attention to defendant's silence. Moreover, the trial court expressly cautioned the jury against such consideration. See

Martinez v. Commonwealth, 10 Va. App. 664, 669, 395 S.E.2d 467, 470 (1990), aff'd as modified, 241 Va. 557, 403 S.E.2d 358 (1991).

Accordingly, we affirm the convictions.

Affirmed.

BENTON, J., dissenting.

While I agree that the admission of a juvenile's confession must be viewed under "the totality of the circumstances," Fare v. Michael C., 442 U.S. 707, 724-25 (1979); Green v. Commonwealth, 223 Va. 706, 710, 292 S.E.2d 605, 607-08 (1982), failure of the police to notify appellant's legal guardian that appellant was in custody and would be interrogated is a significant factor that, when combined with the other circumstances, renders the confession involuntary and requires suppression. I would hold that the record establishes that the Commonwealth did not prove "by a preponderance of the evidence . . . that [appellant's] statement was voluntary." Williams v. Commonwealth, 234 Va. 168, 172, 360 S.E.2d 361, 364 (1987), cert. denied, 484 U.S. 1020 (1988).

Special considerations must be addressed when examining juveniles' confessions. In re Gault, 387 U.S. 1, 55 (1967). The court must evaluate "the juvenile's age, experience, education, background, and intelligence, and . . . whether [the juvenile] has the capacity to understand the warnings given him, the nature of his Fifth Amendment rights, and the consequence of waiving those rights." Fare, 442 U.S. at 725. This extensive evaluation is necessary because "the greatest care must be taken to assure that the admission was voluntary, in the sense not only that it was not coerced or suggested, but also that it was not the product of ignorance of rights or of adolescent fantasy, fright

or despair."  In re Gault, 387 U.S. at 55.  In this evaluation, the absence of a parent or guardian is "a circumstance that weigh[s] against the admissibility of the [juvenile's] confession."  Miller v. Maryland, 577 F.2d 1158, 1159 (4th Cir. 1978).

Appellant's grandmother, his legal guardian, asked that she be notified as soon as the police officers located her grandson.  When the police officers spoke to the grandmother, she initially gave them a telephone number that was her former number.  She then gave them another number saying she had gotten "a new phone fairly recently."  In addition, however, the police officers knew where she lived because they spoke to her at her residence when they were looking for appellant.

When the police officers arrested appellant at his friend's house, they did not call appellant's grandmother from the friend's residence and did not stop at her residence.  They told the friend's mother that they "were going to contact [appellant's grandmother]."  They did not.  Instead, they put handcuffs on appellant, and, during the ride to the police station, they began to talk to him about the crime.  When he denied involvement, the police officers told him "he could be tried as an adult" and that "he could spend a very long time in prison."  Thus, they began pressuring him before they attempted to contact his grandmother.

Later, when the police officers began to interview appellant at the police station, he told the officers that he wanted to

talk to a lawyer. One of the officers "told him fine, that he would be transported on over to the detention home." Appellant then said he would continue to talk. The record establishes that the police officers did not then suspend questioning until appellant could either consult with a lawyer or discuss with his grandmother whether to waive his right to counsel.

The grandmother testified that she made three telephone calls to the police station and that "they wouldn't tell me if [appellant] was there or not." The following evidence also suggests that during the interrogation the police officer learned that appellant's grandmother had called and, even then, made no effort to send an officer for her:

> A. Well, when we placed him under arrest, we were on Pacos Street, which is off of Leesville Road here in the city, and placed him in our patrol car, the car we were driving, and transported him to the station. When we got to the station I tried to call the grandmother at the phone number two different times. And the phone rang and rang and I received no answer on the phone?
>
> We went on and talked to Brandon. A short while later, I don't remember how long it was, I received a note from the detention people on duty at the Police Department that Brandon's grandmother had called and requested that I call her. I'm not sure whether she may have been notified that Brandon had been picked up or what the case was? I again tried to call her and received no answer.
>
> We interviewed Brandon, and shortly after the interview was over the grandmother was on the phone again to the Detention Unit. They held her on the phone and contacted me in my office and transferred the call to me. I talked to her at that time.

- 11 -

The police officer's effort was plainly inadequate. The police officer never checked to determine if he had written the correct phone number. The police officer also failed to retain the telephone number he called. Even if he called the correct number, the record clearly reveals that the grandmother had difficulty hearing. From the discussion on the record, her difficulty was apparent and should have been obvious to the police officer when he spoke to her in person. Even if the hearing problem had gone unnoticed, the police officer certainly should have suspected that either appellant's grandmother did not hear her phone after midnight or he was dialing the wrong number.

The police officers arrested and interrogated appellant between the late night hours of midnight and 1:30 a.m. Appellant was placed in handcuffs, warned that he would be treated as an adult and imprisoned, and taken to the police station. He was sixteen years of age and of average intelligence. When he asked for an attorney, he was told that he would be put in the detention home. Because the police officers had spoken in person with the grandmother at her home, they knew she lived only a short distance from the police department. Even though numerous patrol cars were on duty, the police officers who arrested and interrogated appellant did not direct any officer to drive to the grandmother's residence and inform her personally. Clearly, the police officers exerted a minimal amount of effort in contacting appellant's grandmother.

When appellant's grandmother did not answer her phone after midnight, the police officers commenced an interrogation in which the appellant waived his Fifth Amendment rights.  The police officers were "deal[ing] with a person who is not equal to the police in knowledge and understanding of the consequences of the questions and answers being recorded and who is unable to know how to protect his own interests or how to get the benefits of his constitutional rights."  Gallegos v. Colorado, 370 U.S. 49, 54 (1962).  Other states have recognized the importance of the presence of a parent or guardian by requiring that an interested adult be present or available for consultation during the interrogation of a juvenile and the solicitation of waiver of any constitutional rights.  See Commonwealth v. A Juvenile (No. 1), 449 N.E.2d 654 (Mass. 1983); People v. Saiz, 620 P.2d 15 (Colo. 1980); Commonwealth v. Henderson, 437 A.2d 387 (Pa. 1981).  Indeed, this Court has stated "that it is desirable to have a parent, counsel or some other interested adult or guardian present when the police interrogate a juvenile, and . . . even more desirable to have an interested adult present when a juvenile waives fundamental constitutional rights and confesses to a serious crime."  Grogg v. Commonwealth, 6 Va. App. 598, 613, 371 S.E.2d 549, 557 (1988).

When the police officers informed appellant of drastic consequences that he faced, responded to his request for counsel by preparing him for detention, and provided no opportunity for

him to consult with his guardian before questioning, their conduct was unreasonable under the circumstances.  As a result, the police effectively denied appellant the opportunity at a critical juncture to speak with an adult prior to the interrogation.  The record fails to establish a need to act hastily at one o'clock in the morning and interrogate this juvenile without the presence of his grandmother.  I would hold the confession involuntary under "the totality of the circumstances," because the police took little care to assure the confession was voluntary when the law demands that the "greatest care" be exercised.  In re Gault, 387 U.S. at 55.