# COURT OF APPEALS OF VIRGINIA

## Record No. 1019-25-3

CRAIG ALLEN HALL

v.

COMMONWEALTH OF VIRGINIA

Present: Chief Judge Decker, Judges Raphael and White

Opinion Issued May 26, 2026[*]

### FROM THE CIRCUIT COURT OF ROANOKE COUNTY
Charles N. Dorsey, Judge

(John S. Koehler; The Law Office of James Steele, PLLC, on brief), for appellant.

(Jay Jones, Attorney General; Aaron J. Campbell, Senior Assistant Attorney General, on brief), for appellee.

### MEMORANDUM OPINION
### PER CURIAM

Craig Allen Hall appeals his convictions for malicious wounding and child abuse in violation of Code §§ 18.2-51 and -371.1(A). He contends that the trial court erred by overruling his objection to the comments made by the Commonwealth's attorney during closing argument and by granting the Commonwealth's jury instruction allowing an inference that every person intends the natural and probable consequences of his acts. For the following reasons, we conclude that Hall waived his challenge to the prosecutor's closing argument. Further, the trial

---

[*] This opinion is not designated for publication. See Code § 17.1-413(A).

court did not abuse its discretion by instructing the jury as it did. Accordingly, we affirm the convictions.[1]

BACKGROUND[2]

A.H., a four-month-old girl, suffered several injuries while in Hall's care. In response to a 911 call, Roanoke County Master Paramedic Firefighter Donald Blankenship met Hall at his home on the night of April 26, 2023. Hall said that when he was feeding A.H., he accidentally dropped her. Hall told Blankenship that A.H. "landed on her back." Blankenship assessed her and recommended taking A.H. to the hospital. Hall drove A.H. to the hospital as instructed.

Once there, medical personnel noted bruising to A.H.'s forehead, chin, cheeks, lip, and abdomen. Bruising was also found on the inside of her ear. Other documented injuries included hemorrhages in her eye and abrasions on her face and fingers. A.H. experienced seizures, but they were ultimately controlled with medication. The hospital records reflected multiple practitioners' and physicians' diagnoses that A.H. suffered a non-accidental traumatic injury.

At the hospital, Hall told a forensic nurse examiner that he had A.H. in his arms when the accident occurred. According to Hall, as he tried to "make a bottle," A.H. "was wiggling around." He claimed that when he repositioned her, A.H. wiggled again and "just fell straight down."

_____

[1] Having examined the briefs and record in this case, the panel unanimously agrees that oral argument is unnecessary because "the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument." *See* Code § 17.1-403(ii)(c); Rule 5A:27(c).

[2] We recite the facts in the light most favorable to the Commonwealth, as the proponent of the challenged jury instruction. *See Nottingham v. Commonwealth*, 73 Va. App. 221, 228 (2021). "[T]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts." *Perkins v. Commonwealth*, 84 Va. App. 519, 524 n.5 (2025) (quoting *Williams v. Panter*, 83 Va. App. 520, 527 n.1 (2025)). "The remainder of the previously sealed record remains sealed." *Williams*, 83 Va. App. at 527 n.1 (quoting *Levick v. MacDougall*, 294 Va. 283, 288 n.1 (2017)). We use the child's initials to protect her privacy.

Detective Justin Baker with the Vinton Police Department interviewed Hall twice. During the first interview, Hall explained that A.H. accidentally fell on her back as he tried to feed her. At that time, the account Hall gave to Baker was consistent with the one he gave to the forensic nurse examiner.

During the second interview with Detective Baker, Hall initially repeated the same version of events. Baker confronted Hall, saying that the medical diagnosis was "abusive head trauma" and that an expert had informed him there was "no way" that a fall caused A.H.'s injuries. At first, Hall insisted that he had been telling the truth. But after Detective Baker asked Hall directly if he shook A.H. before she fell, Hall admitted to shaking her and said that he did so to calm her when she was crying. According to Hall, over time, when A.H.'s crying got worse, he started shaking her "a little harder." He admitted that he shook her on the night she was injured. He denied knowing that shaking A.H. was "causing damage."

A grand jury indicted Hall for malicious wounding and felony child abuse. At trial, Dr. Donald Keyes testified as an expert in pediatrics and child abuse. He opined that A.H.'s injuries were caused by non-accidental trauma. The bases for this opinion included the location of the bruises, the pattern of bleeding, and the retinal hemorrhages. As to the bruises, for example, Keyes explained the bruises inside the ear and on the abdomen were not consistent with a fall and suggested that someone inflicted the injuries. Significantly, Dr. Keyes observed that A.H.'s injuries were on the front of her body, not on her back, belying the theory that A.H. was injured when she fell on her back. Dr. Keyes also explained that the pattern of bleeding, which resulted from tearing of the blood vessels that "bridge from the skull to the surface of the brain," was "characteristic of abusive head trauma." A.H.'s CT scan showed "extensive bleeding" that Keyes "would never expect . . . from a simple fall." And the retinal hemorrhages indicated that someone forcibly shook A.H.

Focusing on the head injury and the retinal hemorrhages, Dr. Keyes explained that when the two injuries present together, medical professionals understood they could be caused by "very forced shaking." He believed that trauma to A.H.'s brain triggered her seizures.

Dr. Keyes also opined that abusive head traumas result in a "classic triad" of diagnosable injuries: subdural hemorrhage, retinal hemorrhages, and rib fractures. Notably, the two forms of hemorrhages were present. And although the X-rays of A.H. did not show any new, unhealed fractures, they revealed multiple healing rib fractures.

After the close of the Commonwealth's evidence, Hall elected not to testify. He moved to strike the charges, arguing that the Commonwealth did not prove that he shook or bounced A.H. "with the intent to maim, disfigure, disable, or kill as required by the malicious wounding" charge and that there was not "sufficient evidence of a willful act" as required by the felony charge for child neglect. The trial court denied the motion.

When the parties discussed jury instructions, defense counsel objected to one of the Commonwealth's proposed instructions on intent. The challenged instruction stated, "You may infer that every person intends the natural and probable consequences of his acts." The court held that the proposed instruction was "an accurate statement of law" and gave the instruction.

During closing argument, the prosecutor called the jury's attention to Hall's "demeanor in court," noting, "You had an opportunity to watch him all day long . . . while we saw the photos of those injuries." Defense counsel objected that the argument was an improper comment on Hall's exercise of his right not to testify. The trial court agreed that Hall had "an absolute right not to testify [and] an absolute right not to introduce any evidence" but held that the jury was "not prohibited from seeing him as he is present." It held that the Commonwealth's argument was not "testimonial" or "invasive of his absolute right not to testify because . . . by law he is required to be present." The court overruled Hall's objection. The prosecutor then argued that

the jury was "free to make [its] own observations" and noted she "didn't see concern or sadness in that quite troubling testimony."

The jury convicted Hall of malicious wounding and child abuse. The trial court sentenced him to thirty years of incarceration, with twenty-five years suspended.

ANALYSIS

I. Closing Argument

Hall argues that the trial court erred by overruling his objection to certain portions of the closing argument made by the Commonwealth's attorney. He suggests the prosecutor "improperly impugned" his exercise of his right to not testify "by inviting the jury to infer guilt from his demeanor during the trial."

We begin our analysis recognizing "[a] trial court has broad discretion in the supervision of opening statements and closing argument." *King v. Commonwealth*, 77 Va. App. 748, 763 (2023) (quoting *Jones v. Commonwealth*, 71 Va. App. 70, 92 (2019)). "[An appellate] court will not interfere with the exercise of this broad discretion unless it affirmatively appears that such discretion has been abused and that the rights of the complaining litigant have been prejudiced." *Id.* (quoting *Walls v. Commonwealth*, 38 Va. App. 273, 280 (2002) (alteration in original)).

But there are certain procedural requirements in place that must be carried out in the trial court to challenge comments on appeal. "Virginia law makes clear that 'errors assigned because of a prosecutor's improper comments . . . during argument will not be considered on appeal unless the accused timely moves for a cautionary instruction or for a mistrial.'" *Harvey v. Commonwealth*, 76 Va. App. 436, 458 (2023) (alteration in original) (quoting *Martinez v. Commonwealth*, 241 Va. 557, 559 n.2 (1991)). "If defense counsel 'believes that an argument requires or justifies a mistrial, he has the duty to [make a mistrial motion] promptly *before conclusion of the argument*.'" *Id.* (alteration in original) (quoting *Bennett v. Commonwealth*, 29

Va. App. 261, 281 (1999) (emphasis added)). "[T]he objecting party must expressly seek the action that it desires the judge to take." *Bennett*, 29 Va. App. at 280. "This rule applies even where the defendant makes an objection to the argument that is overruled by the trial court." *Harvey*, 76 Va. App. at 458.

Hall concedes that his trial counsel did not move for a cautionary instruction or a mistrial.[3] He suggests that this Court should characterize his objection "not so much an objection to the closing argument itself, but to the impermissible aspersion on his right to remain silent," which he posits was "a due process error which th[is] Court may review as a structural error."

A "[s]tructural error exists 'only in a "very limited class of cases"'" and is of such a magnitude that it "defies 'analysis by "harmless-error" standards.'"[4] *Ray v. Commonwealth*, 55 Va. App. 647, 651 (2010) (first quoting *Neder v. United States*, 527 U.S. 1, 8 (1999); and then quoting *Puckett v. United States*, 556 U.S. 129, 141 (2009)). Critically, Hall fails to articulate how characterizing the asserted error as structural, which affects only the applicability of harmless error review, would excuse the consequences of his failure to identify the action that he desired the judge to take. *See* Rule 5A:20(e) (requiring the opening brief to contain argument and authority supporting the assignment of error). We have observed that "[t]here appears to be no exception in Virginia law to the strict application" of the requirement that Hall move for a

---

[3] A different attorney represents Hall on appeal than at trial.

[4] "A 'structural error' is a 'defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself.'" *Jackson v. Warden of the Sussex I State Prison*, 271 Va. 434, 436 (2006) (quoting *Morrisette v. Warden of the Sussex I State Prison*, 270 Va. 188, 192 (2005)) (listing examples of structural errors); *accord Clark v. Commonwealth*, 78 Va. App. 726, 757-58 n.14 (2023). We have analyzed claims like the one Hall presents here as trial errors, requiring demonstrations of prejudice to the defendant. *See, e.g.*, *Smith v. Commonwealth*, 40 Va. App. 595, 602 (2003); *Novak v. Commonwealth*, 20 Va. App. 373, 392 (1995); *Winston v. Commonwealth*, 12 Va. App. 363, 367, 369-70 (1991). So we decline Hall's invitation to view his claim as a structural error.

cautionary instruction or mistrial. *See Harvey*, 76 Va. App. at 459 (quoting *Bennett*, 29 Va. App. at 281). Hall did not request any specific corrective action. As a result, he waived any objection to the Commonwealth's comments during closing argument related to his in-court demeanor. *See id.* at 458-59.

## II. Jury Instruction

Hall contends that the trial court erred by instructing the jury that it could infer a person's intent based on the natural and probable consequences of his acts. He claims that this instruction impermissibly shifted the burden of proof to the defense.[5]

"On appeal, a trial court's decision to give or deny requested jury instructions is reviewed for an abuse of discretion." *Jordan v. Commonwealth*, 84 Va. App. 446, 473 (2025). This "standard draws a line—or rather, demarcates a region—between the unsupportable and the merely mistaken, between the legal error . . . that a reviewing court may always correct[] and the simple disagreement that, on this standard, it may not." *Jefferson v. Commonwealth*, 298 Va. 1, 10-11 (2019) (quoting *Reyes v. Commonwealth*, 297 Va. 133, 139 (2019) (first alteration in original)). "[T]he abuse of discretion standard requires a reviewing court to show enough deference to a primary decisionmaker's judgment that the [appellate] court does not reverse merely because it would have come to a different result in the first instance." *Commonwealth v. Thomas*, 73 Va. App. 121, 127 (2021) (first alteration in original) (quoting *Lawlor v. Commonwealth*, 285 Va. 187, 212 (2013)). "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." *Bista v. Commonwealth*, 303 Va. 354, 370 (2024) (quoting *Commonwealth v. Swann*, 290 Va. 194, 197 (2015)).

This assignment of error is foreclosed by case precedent. The Supreme Court of Virginia has "repeatedly rejected the assertion that the 'natural and probable consequences of his acts'

---

[5] He does not argue that the instruction was not applicable to the facts of his case.

instruction unconstitutionally 'shifts the burden of proof'" to the defense. *Tizon v. Commonwealth*, 60 Va. App. 1, 21 (2012) (quoting *Thomas v. Commonwealth*, 279 Va. 131, 166 (2010)); *e.g.*, *Schmitt v. Commonwealth*, 262 Va. 127, 145 (2001). In fact, it has approved the very instruction given in Hall's case as constitutional. *E.g.*, *Thomas*, 279 Va. at 166.

Hall submits that the Commonwealth's burden to prove malice distinguishes his case. He argues that "the instruction is improper because it permits the jury to speculate not merely that Hall intended to harm that child, but that he did so with willful malice." Yet this Court has approved the same instruction in a murder case, in which the Commonwealth was likewise required to prove malice. *See Tizon*, 60 Va. App. at 11, 21. Hall's suggested distinction is unpersuasive. *See generally Hannon v. Commonwealth*, 68 Va. App. 87, 96 (2017) (explaining that under the interpanel accord doctrine, a panel of this Court is bound by other panel opinions of the Court).

The trial court did not abuse its discretion in granting the challenged instruction.

CONCLUSION

Hall waived his objection to the prosecutor's closing argument about his demeanor during the trial. Further, the challenged jury instruction did not shift the burden of proof to the defense. For these reasons, we affirm the convictions.

*Affirmed.*